STOKER, Judge,
concurring.
I concur in the result reached by the majority opinion. This concurrence is based on one particular circumstance. Therefore, I do not reach the fundamental issue on which the majority and dissenting opinions are based.
After a study of the record it becomes quite evident why Mrs. Nash did not seek employment or take steps to equip herself to earn some portion of her livelihood. The reason she did not is that Mr. Nash advised her that it would not be necessary. At the time of the separation Mr. Nash took the magnanimous position that he should take care of Mrs. Nash for the remainder of her life. He proposed the arrangement of which he now complains. She accepted the arrangement. Mr. Nash admitted at the hearing on the matter that he never suggested to Mrs. Nash that she seek employment prior to petitioning for the alimony reduction sought in this case.
The position of the trial court (that a reduction is in order) is predicated on Mrs. Nash’s failure to take steps since the separation to earn some of her own support. This predicate is in fact lacking because Mr. Nash led Mrs. Nash to believe that such a course would not be necessary. At this point, at least, I should think that Mr. Nash’s assurances, relied upon by Mrs. Nash, should operate as an estoppel against him. Her position is certainly not unreasonable under the circumstances. Because of this special circumstance, I concur in the reversal of the trial court’s judgment.
In order to emphasize the moral position of Mrs. Nash and the extent to which Mr. Nash’s assurances ran, I will burden this concurrence with the following quotations from the transcript of the testimony.
On pages 58 and 59 of the transcript the following quotations and answers by Mr. Nash are recorded:
“Q These items that we’re referring to in payments by you to Mrs. Nash, there were all agreed to by you, were they not?
A Yes.
Q These were, in fact, your own proposals to your wife whenever y’all separated, was it not?
A That’s true. May I elaborate on that answer?
BY MR. STEWART:
Wait until your counsel asks you these things.
*1093 BY MR. CABRA:
Your Honor, I think he has a right to explain his answer.
BY THE COURT:
He can explain his answer. Explain it.
BY MR. STEWART:
Q Go ahead.
A Yes, I did. In fact, except for the changes for legality, I drew up the agreement. I drew up the agreement based upon my mental frame of mind at the time, knowing what my income was, and remembering also that we were married when she was seventeen and I was twenty. I have been her sole support for these years, and even with the divorce coming up, and I say, my personal and mental frame of mind. I had been responsible for her since she was seventeen years old. I consider myself still responsible for her to assure that I was providing for her for the best way I could, even with the divorce coming up. But I say again, that was my frame of mind based upon our life together.”
Mr. Nash admitted, as recorded on transcript pages 61 and 62, that he never suggested to his former wife that she should go to work and contribute to her own support:
“BY MR. STEWART:
Q Mr. Nash, have you ever advised your wife of how easy it would be for her to get a job as a GS-3?
A No, I’ve had very little occasion to communicate with my wife since our separation.
Q You have written letters on occasion, haven’t you?
A Yes.
Q Have you ever suggested to her in any way that she apply for a GS-3 job?
A Not specifically to apply for a GS-3 job, no.
Q But you come into Court here saying she could have had a GS-3 job all this time, but you never suggested it to her, did you?
A I would say that only from the point that whether jobs are available to her or not. I know that GS-3 jobs are available, because of where I work. There may be better jobs available right here in DeRidder, but I don’t have any knowledge of those.
Q But you have knowledge of this, but you’ve never suggested it to her?
A No, I didn’t feel it was my position to.”
As recorded on transcript page 72 Mr. Nash reiterated what had been his initial attitude toward his wife working but states that he had since changed his mind:
“Q Mr. Nash, are you asking to terminate alimony for your wife?
A No, I’m not asking to terminate. I recognize that being a housewife all the years that she was, at her — she has a reduced earning capability, and that she supported me as I got to the state in life that I am now. I am willing to augment that. As I mentioned previously, at the time we separated, I had been her sole support for thirty-four years, and mentally I considered myself as still being totally responsible for her support. Since that time I have reconsidered. I was not advised by counsel at the time, and I frankly see no reason at this point that I should be her sole support, but I am willing to pay something to augment her own reduced earning capabilities.”
Mrs. Nash stated on transcript pages 74-77 her reliance on what her husband told her and the alimony arrangement embodied in the alimony judgment based on his suggestions. The testimony is recorded as follows:
“Q What attempts have you made to seek employment since the date that you and your husband physically separated?
A None, because he told me that he would take care of me for life, that he felt that I had earned that retirement as much as he had, and that I deserved it, and I never thought that I would have to do it.
Q Had earned your portion of his retirement pay?
*1094 A Yes, that’s true.

Q ■ Now, if I understood your response to my question you have not sought any employment whatsoever since the day that you physically separated?
A No.
Q Have you attempted to seek any type of further education past your high school degree during this past three years period of time?
A No.
Q Do you intend to?
A I never thought about it, because I believed him.
Q In other words, it’s your feeling that since you’re now divorced from him that he should support you in whatever is necessary for the rest of your life?
A It was in the judgment. I believed the judgment. That’s what I believed. It was in writing and it was in Court and I believed it.
Q Do you feel you have no obligation to try to help yourself at all? That your ex-husband is responsible for maintaining you, whatever your needs are, from now on?
BY MR. STEWART:
Your Honor, I’m going to object to the question. What her belief is in that regard at this stage, I don’t think—
BY MR. CABRA:
Well, I think it’s—
BY THE COURT:
Objection overruled.
BY MR. CABRA:
Q You can answer the question.
A Tell me that again.
Q Do you feel that it’s your ex-husband’s obligation, or likewise you have no obligation to assist in your daily and monthly and yearly needs from now on, that he should be your sole source of support from now on?
A Well, I go back — it was in the judgment, and I believed it. I didn’t know that it wasn’t true.
Q You’re saying that in the judgment as you understood it that was filed in this Court it says your husband is going to provide all of your needs from now on?
A No, half of his retirement. He gets another civil service check, and I would get half of his retirement for life.
Q Let me ask you the question again, Mrs. Nash, which you still haven’t answered. You feel you have no obligation to assist yourself at all, to seek employment, to try to better yourself at all since he’s no longer there to provide all your needs? Is it your feeling that regardless of what this judgment says that you have no obligation to assist yourself in life at all, by education, by training, by on-the-job training, by seeking some sort of employment, anything?
A I never thought about it. I never thought about going out at my age and starting a career.
Q You never thought about seeking any type of job? I’m not talking about a career, for your information.
A No, I didn’t, because it was — I believed this — when I came to Court here, and he had told me all these years that — well, not all these years, he had always said I would get half of his retirement, I totally believed it, and so, I didn’t think about looking for a job. I just didn’t.
Q I would take it until this rule to reduce this alimony was filed, you still hadn’t thought about it?
A No.
Q You just assumed he would provide all of your needs from now on?
A As I said, it was written in a judgment, and I believed (sic) Court. I guess maybe that’s naive.
* * * yy
For the reasons I have stated above, not only should Mr. Nash be estopped at this point from seeking relief in alimony reduction; the very basis for the trial court’s reasons for judgment are lacking. Mrs. Nash did not arbitrarily fail to seek employment or equip herself to earn some of her *1095 living. Considering all the circumstances, I would not fault Mrs. Nash for not attempting to support herself to some degree. She was entitled to believe that she need not try to compete in the employment market at her age and that she could rely on Mr. Nash’s prior assertions to that effect which had been given the sanction of a judgment of court. In this regard I do not believe she was naive.
For these reasons I concur in the result reached by the majority.